NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

October 21, 2024

Charles P. Guarino, Esq.
323 Gill Lane
Suite 12-I
Iselin, New Jersey 08830
*Counsel for Plaintiff*

Jonathan Eliezer Fleisher, Esq.
Law Offices of Jonathan Fleisher, Esq.
293 River's Edge Lane
Toms River, NJ 08527
*Counsel for Defendant*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:** *Home City Inc. v. Bashian Bros., Inc.*, Civ. No. 22-6043 (SDW) (MAH)

Counsel:

Before this Court is Defendant Bashian Bros., Inc.'s ("Defendant") Motion for Summary Judgment (D.E. 25 ("Mot."))[1] pursuant to Federal Rule of Civil Procedure ("Rule") 56.[2] Jurisdiction is proper pursuant to 28 U.S.C. § 1331, § 1332, and § 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's Motion is **GRANTED.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

The instant matter presents a dispute between two merchants who conduct their respective business on Amazon Vendor Central. Plaintiff is a manufacturer, distributor, and retailer of bedding, bath, and home décor sold throughout the United States. (D.E. 1 ("Compl.") ¶ 6.)

---

[1] Citations to "D.E." refer to the docket entries for the parties' motion papers, including briefs, affidavits, declarations, and statements of undisputed facts, and the documents attached to and referenced therein.

[2] Throughout the record, Defendants are referred to as "Bashian Bro's Inc.," "Bashian Bros Inc.," and "Bashian Bros., Inc." This Court utilizes the name provided on the case caption for the sake of consistency.

Defendant is a company primarily engaged in the sale of rugs—both online and in brick-and-mortar stores. (D.E. 25-1 ("Def.'s SMF") ¶ 3.) Both Plaintiff and Defendant sell their products on Amazon.com, via Amazon Vendor Central ("AVC"), which assigns each merchant its own vendor code and separate warehouse codes depending on how many warehouses a merchant operates. (Def.'s SMF ¶¶ 4, 9–10.) Plaintiff's warehouse code is AGBX.[3] (Def's SMF ¶ 14.) Defendant's vendor code is BAUXN and its Amazon-assigned warehouse code for its singular warehouse is AGXB. (Def.'s SMF ¶¶ 9–10.)

On or about April 7, 2022, Plaintiff accessed the AVC dashboard only to discover all its inventory was erroneously "zeroed out." (Def.'s SMF ¶ 12.) In an attempt to resolve the issue, Plaintiff resubmitted corrective Electronic Data Interchange (EDI) feeds. (*Id.* ¶ 13.) This was to no avail as the inventory would revert to zero. (Compl. ¶ 11.) Plaintiff also contacted AVC's technical support staff, which determined that another vendor was transmitting its vendor code over its EDI feed on May 3, 2022. (*Id.* ¶ 15.) During the twenty-six days that the AVC dashboard displayed Plaintiff's inventory as zero, Plaintiff had staff submit manual inventory updates to AVC. (Compl. ¶ 14.) The issue with the EDI feed was resolved when AVC technical support staff identified that Defendant's vendor code was transmitting Plaintiff's warehouse code, AGBX, instead of their own warehouse code, AGXB. (Def.'s SMF ¶ 14.)

On April 7, 11, 12, 14, 18, and 21 of 2022, Defendant received emails from AVC alerting it to a SEDI Platform Failure. (D.E. 26-7, Ex. D.) These emails apprised Defendant of the EDI system's inability to read input data and further explained this error typically meant its recipient was "either missing a mandatory segment, or . . . added additional information that is not mapped in Amazon's system." (Ex. D at 2, 4, 6, 8, 10, 12.) William Campbell, Defendant's systems administrator, acknowledged that these failures with the "advance shipment notices," were "resolved manually by [Defendant's] Customer Service on Amazon's website." (D.E. 25-7 ("Campbell Dep.") 50:1–53:5.)

However, according to Campbell, it was not until May 3, 2022 that he became aware of the error with the parties' warehouse codes. (Def.'s SMF ¶ 18 (citing Campbell Dep. 43:12–20).) Campbell explained that on May 3, 2022, he had a two-minute conversation with Amazon in which Amazon explained that Defendant's EDI feed was transmitting the incorrect code and requested Campbell change it to the correct code. (Campbell Dep. 43:1–44:8; Def. SMF ¶ 18.) Campbell stated he immediately made the change to the underlying XML data Defendant provides to SPS Commerce, its third-party intermediary translator responsible for providing Amazon with the necessary EDI language. (Def.'s SMF ¶¶ 8, 19; Campbell's Dep. 44:14–15.) However, he was unaware that the transposed code belonged to Plaintiff. (Def.'s SMF ¶ 20.) Additionally, Zev Roth, Defendant's Chief Financial Officer and Chief Technologist Officer, did not notice any disruptions to Defendant's Amazon inventory or sales from April 7 to May 3, 2022. (D.E. 25-6, Ex. B ("Roth Dep.") 8:2–3, 40:3–24.) Defendant was unaware of the alleged damages to Plaintiff until this lawsuit was instituted. (Def.'s SMF ¶ 21.)

---

[3] The Court understands "AGBX" to be Plaintiff's warehouse code notwithstanding Plaintiff's labeling of it as their vendor code.

On October 12, 2022, Plaintiff filed the instant lawsuit alleging Defendant interfered with Plaintiff's credentials "to access and disrupt Plaintiff's electronic inventory systems within" the AVC program, leading to ongoing irreparable harm and damages. (D.E. 1 ¶¶ 20, 24–25, 27–28, 39, 57.) Following discovery and pursuant to a scheduling order, (D.E. 24), Defendant filed the instant Motion for Summary Judgment, (D.E. 25). The parties each submitted a Statement of Material Facts ("SMF") in support of their respective motions. (D.E. 25-1 & 26-1.)

## II.  **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must "set forth specific facts showing the existence of . . . an issue for trial." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing FED. R. CIV. P. 56(e)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his [or her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record [that] supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004) (citing *Celotex*, 477 U.S. at 322–23)). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not "to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002) (citing *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998)).

### III. <u>DISCUSSION</u>

Defendant claims it is entitled to judgment as a matter of law and that this Court should dismiss the entire action. (D.E. 25-2 ("Mot.") at 7.) Defendant argues that: Counts I, II, V, and VI should be dismissed because Plaintiff cannot show intent on behalf of Defendant; Counts III and IV should be dismissed because Defendant did not appropriate Plaintiff's mark, reputation, or goodwill, much less with intent; and Count VII should be dismissed because Defendant did not owe Plaintiff a duty. (*Id.* at 5–6.) Despite drawing all justifiable inferences in Plaintiff's favor, this Court concludes there is no genuine issue of material fact. Accordingly, Defendant's motion for summary judgment will be **GRANTED**.

#### A. Counts I, II, V, and VI

Plaintiff asserts claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* (Count I) and the New Jersey Computer Related Offenses Act ("NJCROA"), N.J. Stat. Ann. § 2A:38A-3 *et seq.* (Count II).

The CFAA permits "[a]ny person who suffers damage or loss" through a violation of § 1030 to bring "a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g); *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 511 (3d Cir. 2005) ("[C]ivil relief is available under § 1030(g)."). It is a violation of § 1030(a) to "intentionally access[] a computer without authorization" and obtain "information from any protected computer," 18 U.S.C. § 1030(a)(2)(C); "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer," *id.* § (a)(5)(A); or to recklessly cause damage or to cause damage and loss from "intentionally access[ing] a protected computer without authorization," *id.* §§ (a)(5)(B)–(C). A "protected computer" is a computer "which is used in or affecting interstate or foreign commerce or communication." *Id.* § (e)(2)(B).

In neither its Complaint, nor its Opposition Brief, did Plaintiff specify under which CFAA provision it is proceeding. Assuming Plaintiff is asserting a claim under one of the subsections requiring intentional conduct, Plaintiff fails to "make a showing sufficient to establish the existence" of an essential element: intent. *See Celotex*, 477 U.S. at 322. Although the CFAA does not define "intentionally," the Third Circuit has interpreted it as "*deliberately* caus[ing] an impairment to the integrity or availability of data, a program, a system, or information." *U.S. v. Carlson*, 209 F. App'x. 181, 184 (3d Cir. Dec. 22, 2006) (emphasis added). *See Kalow & Springnut, LLP v. Commence Corp.*, No. 7-3442, 2008 WL 2557506, at *3–4 (D.N.J. June 23, 2008) (finding the plaintiff failed to plead intent to cause harm as required by § 1030(a)(5)(A)(i)); *accord Margolis v. Apple Inc.*, No. 23-3882, 2024 WL 3755364, at *4 (N.D. Cal. Aug. 6, 2024) (explaining that (1) the CFAA is primarily a criminal statute, (2) the CFAA's legislative history "makes clear that 'intent,' as used in Section 1030(a)(5)(A), should be understood as synonymous with 'purpose' as that term is used in the Model Penal Code," and (3) that constructions of the statute are equally applicable in civil cases).

Here, Defendant has met its burden of proof and demonstrated no genuine issue with regard to intent. In his deposition, Campbell explained how its inventory feed is automated to run multiple times a day and how SPS Commerce would receive these files and contact Defendant if they did not receive a "feed." (Campbell Tr. 14:22–17:4.) Campbell explained he would only become involved with Amazon if something stopped working and that it was not until May 3, 2022—when AVC contacted him—that he became aware of the mishap with the warehouse codes. (*Id.* at 14:22–15:2, 43:12–20.) Plaintiff points to the six emails alerting Defendant as to an SEDI Platform Failure, yet this does not provide support for its claim that Defendant acted with the intent to access Plaintiff's computer without authorization or to transmit a code with the intent to cause damage. The emails do not support the conclusion that Defendant "deliberately caused an impairment to the integrity or availability" of the EDI data. Although Defendant received these notices, nothing about these six emails stood out to Campbell, who simply added them to a troubleshooting queue. (Campbell Tr. 51:4–23.) As such, the emails did not put Defendant on notice of its conduct; that occurred on May 3, 2022 and when alerted, Defendant promptly resolved the problem.

Even if this Court assumes Plaintiff is proceeding under § 1030(a)(5)(A), which does not require intent, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant intentionally accessed a protected computer without authorization. *See Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio*, No. 9-2751, 2010 WL 4224473, at *4 (concluding that under § 1030(a)(5)(A)(iii), the plaintiffs did not need to allege an intent to harm, but rather needed to demonstrate that the defendant intentionally accessed the protected computer without authorization). Plaintiff's Complaint contains no allegations stating Defendant attempted to access its computer and the record is devoid of such evidence. For those reasons, Defendant is entitled to judgment as a matter of law on Count I and Count II. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) ("[C]ourts seem to have interpreted the New Jersey Act in harmony with its federal counterpart."); *Goydos v. Rutgers, State Univ.*, No. 19-8966, 2024 WL 1329253, at *6 (D.N.J. Mar. 28, 2024) (discussing claims under CFAA and NJCROA in tandem).

Similarly, this Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's intentional and tortious interference claims (Counts V and VI, respectively) which also require a showing of intent.[4] *See Telebrands Corp. v. Ragner Tech. Corp.*, No. 16-3474, 2019 WL 1468156, at *5 (D.N.J. Apr. 3, 2019) ("To state a claim for tortious interference with prospective business advantage under New Jersey law, a plaintiff must allege '[1] that it had a reasonable expectation of economic damage, [2] which was lost as a direct result of [defendant's] malicious interference, and [3] that it suffered losses thereby.'") (alterations in original) (quoting *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016)).

### B.  Counts III and IV

Plaintiff brings claims for unfair competition under both New Jersey's Unfair Competition Act ("UCA"), N.J. Stat. Ann. § 56:4-1, and the common law (Counts IV and III, respectively).

---

[4] Although Plaintiff did not label it as such, this Court construes Count V to allege intentional interference with prospective business advantage given the assertion that "Defendant interfered . . . by knowingly and/or recklessly employing Plaintiff's credentials." (Compl. ¶ 39.)

The UCA provides: "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J. Stat. Ann. § 56:4-1. This Court finds that Defendant is entitled to judgment as a matter of law on Count IV because Plaintiff has not demonstrated there is a genuine issue of material fact as to whether Defendant appropriated Plaintiff's reputation or goodwill. *Cf. Avaya, Inc. v. Cisco Sys., Inc.*, No. 10-5881, 2012 WL 2065536, at *7 (D.N.J. June 7, 2012) (dismissing the defendant's unfair competition claim where there were no allegations of an illegal or improper purpose behind plaintiff's actions); *Impact Protective Equip., LLC v. XTech Protective Equip., LLC*, No. A-879-19, 2021 WL 1395618 (N.J. Super. Ct. App. Div. Apr. 14, 2021) (holding the plaintiffs' amended complaint did not state a claim for statutory unfair competition where they did not "allege that XTech attempted to pass off their products as Impact's, claimed an affiliation with Impact, or wrongfully used Impact's brand.").

Likewise, this Court concludes Defendant is entitled to judgment as a matter of law on Count IV. Under common law principles, New Jersey courts have interpreted unfair competition claims in accordance with common law principles. *Cisco Sys., Inc.*, 2012 WL 2065536, at *7 (citing *Columbia Broadcast Sys. v. Melody Recordings*, 341 A.2d 348 (N.J. Super. Ct. App. Div. 1975)). When assessing the sufficiency of such a claim, courts "identify any use of misleading, deceptive, injurious or otherwise improper and wrongful practices which would render competition unfair." *Id.*

Here, Plaintiff does not point to evidence in the record to counter Defendant's theory of the case that the letters in the warehouse codes were transposed inadvertently and that the error did not lead to increased sales for Defendant. As Defendant notes, although both parties are AVC merchants, they are different types of retailers such that Defendant was not attempting to "capture market share" or "gain some sort of competitive advantage." (Mov. Br. at 13.) Plaintiff fails to "make a showing sufficient to establish the existence of" an improper, misleading, or deceptive purpose or motive, such that Defendant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322–23.

### C. Count VII

In response to Plaintiff's negligence claim (Count VII), Defendant argues it does not owe Plaintiff a duty because Plaintiff was not a foreseeable plaintiff, and even if a duty was owed, Defendant maintains it was not the proximate cause of Plaintiff's injuries. (Mov. Br. at 16, 18–19.) Plaintiff alleges Defendant's negligent conduct was the proximate cause of Plaintiff's injuries resultant from the warehouse code swap namely, lost sales, loss of ranking status on Amazon, and the losses associated with investigating and mitigating the incident. (D.E. 26 ("Opp. Br.") at 4, 6–8.)

"In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: '(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages.'" *Polzo v. Cnty. of Essex*, 960 A.2d 375, 384 (N.J. 2008) (alterations in original) (quoting *Weinberg v. Dinger*, 524 A.2d 366 (N.J. 1987)). The economic loss doctrine generally bars plaintiffs "from resorting to tort law in an 'attempt[] to seek the benefit of the bargain they

made in their agreement'" by recovering for purely economic losses. *SRC Constr. Corp. of Monroe v. Atlantic City Hous. Auth.*, 935 F. Supp. 2d 796, 799–800 (D.N.J. 2013) (alteration in original) (quoting *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 278 (N.J. 2002)). However, absent a contract between parties, the economic loss doctrine is inapplicable. *Id.* at 799.

Thus, where a "defendant's negligent conduct . . . interferes with a plaintiff's business resulting in purely economic losses, unaccompanied by property damage or personal injury," it is compensable in tort. *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 495 A.2d 107, 108 (N.J. 1985). However, in such cases, a defendant only owes a duty of care to plaintiffs "comprising an identifiable class with respect to whom [the] defendant knows or has reason to know are likely to suffer such damages from its conduct." *Id.* at 116. The class of plaintiffs "must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted." *Id.* "The more particular is the foreseeability that economic loss will be suffered by the plaintiff as a result of defendant's negligence, the more just is it that liability be imposed and recovery allowed." *Id.*

This Court finds that Plaintiff has not made a showing sufficient to find a genuine issue of material fact as to its negligence claim. Here, because the parties do not have a contractual agreement, the economic loss doctrine does not bar Plaintiff's claim. *See SRC*, 935 F. Supp. 2d at 799. However, Plaintiff fails to carry its burden of proving foreseeability, an essential element to its negligence claim. Plaintiff identifies "other users of the AVC ecosystem, which included Amazon itself as well as fellow authorized AVC vendors" as the foreseeable class of plaintiffs which it is a part of. (Opp. Br. at 7.) Plaintiff points to Amazon's Vendor Site Terms, in which Defendant agreed that it was "responsible for all activities that occur under [its] account or password." (D.E. 26-4, Ex. A at 21.) This evidence does not demonstrate a genuine issue of material fact as to whether Defendant knew or had reason to know of Plaintiff—a merchant with whom it is not in competition with. Plaintiff's proposed class of foreseeable plaintiffs is not particular "in terms of the type" of merchants, the certainty of their presence, nor their numerosity. *See People Express*, 495 A.2d at 116.[5] As such, Defendant is entitled to judgment as a matter of law on Count VII.

---

[5] *See also Jasper v. Bank of Am. Corp.*, No. 20-2842, 2020 WL 5868849, at *3–4 (D.N.J. Oct. 2, 2020) (dismissing plaintiff's negligence claim against defendant Yahoo! Inc. where the plaintiff, who was not a registered Yahoo! user and received an email from an unidentified hacker with an email address similar to plaintiff's counsel requesting $281,500 pursuant to a settlement agreement, proposed he was "part of a class of plaintiffs made up of 'those who deal with' financial professionals whose Yahoo! accounts have been hacked." The court concluded this class "comprised a multiplicity of types of individuals and business entities," was boundless, and that the harm caused was "more fortuitous than predictable."); *Eaton v. Tosti*, No. 9-5248, 2010 WL 2483318, at *9 (D.N.J. June 4, 2010) (concluding in a negligence case brought by an antiques dealer against relatives or the individual who sold stolen items to the dealer that the proposed class of "one or more third parties" was not an identifiable class of plaintiffs given the lack of requisite specificity under *People Express*).

**IV.** <u>**CONCLUSION**</u>

      For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

                                       /s/ Susan D. Wigenton
                                **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties
        Michael A. Hammer, U.S.M.J.